UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                                             Case No. 2:22-bk-00021-FMD
                                                                                         Chapter 7
Joseph Robert Verna and
Karen Elizabeth Verna,

       Debtors.
_____/

## DEBTORS' MOTION FOR PROTECTIVE ORDER

Joseph Robert Verna ("Mr. Verna") and Karen Elizabeth Verna ("Mrs. Verna"), the above-captioned debtors ("Debtors"), by and through the undersigned legal counsel, files this Motion for Protective Order ("Motion") and, as grounds therefor, respectfully state as follows:

### JURISDICTION AND VENUE

1.    The United States District Court for the Middle District of Florida ("Court") is the proper venue for the above-captioned Chapter 11 bankruptcy case ("Case") pursuant to 28 U.S.C. § 89(b), 1408(1), and 1409. The Court's Fort Myers Division is the appropriate place to hold court under Local Rule 1071-1(b)(4). Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### BACKGROUND

2.    As noted in the Chapter 11 Case Management Summary (Doc. No. 10) ("CMS"), the Debtors initiated the above-captioned bankruptcy case ("Case") over Eight (8) months ago to avoid a pyrrhic victory in litigation (the "Pennsylvania Litigation") which commenced in February 2020 and did not reasonably appear to be near resolution. CMS at 2-3, ¶¶5-7. The Pennsylvania Litigation took place in the Court of Common Pleas for Chester County, Pennsylvania (the "Pennsylvania Court"), is captioned *Dr. Joseph Verna v. Dr. Carl Hiller et al.*,

and bears the Pennsylvania Court's Case No. 2020-00424. Dr. Carl Hiller ("Dr. Hiller") and Mrs. Susan Hiller ("Mrs. Hiller") were parties to the Pennsylvania Litigation. During the Pennsylvania Litigation, Dr. Hiller and Mrs. Hiller propounded discovery to One (1) or both of the Debtors, and the Debtors provided Dr. Hiller and Mrs. Hiller over Fifteen Thousand (15,000) documents.

3. On January 10, 2022 (the "Petition Date"), the Debtors initiated the above-captioned bankruptcy case as a small business reorganizational case under Chapter 11, Subchapter V of the Bankruptcy Code.

4. On January 12, 2022, the Notice of Chapter 11 Bankruptcy Case (Doc. No. 6) ("Chapter 11 Notice") was entered in the Case. The Chapter 11 Notice provided that the Meeting of Creditors ("341 Meeting") would take place January 27, 2022.

5. On January 24, 2022, Dr. Hiller and Mrs. Hiller filed a Notice of Appearance, Request for Service of Notices, Pleadings and Other Forms (Doc. No. 19) on behalf of themselves and the following parties (collectively with Dr. Hiller and Mrs. Hiller, the "Hillers"): Neuromusculoskeletal Chiropractic and Rehabilitation Associates, PC d/b/a NMS Spine & Joint Institute, Dr. Carl Hiller, derivatively on behalf of Neuromusculoskeletal Chiropractic and Rehabilitation Associates, PC d/b/a NMS Spine & Joint Institute, Chiropractic Medicine Auditing Professionals, LLC, Dr. Carl Hiller, derivatively on behalf of Chiropractic Medicine Auditing Professionals, LLC, 8 Oaklands, LLP, and Dr. Carl Hiller, derivatively on behalf of 8 Oaklands, LLP.

6. On January 25, 2022, the 341 Meeting was continued to February 3, 2022.

7. At or around 9:00am on February 3, 2022, the 341 Meeting began, at which time the Hillers deposed the Debtors. The 341 Meeting was continued to February 16, 2022 to allow further examination of the Debtors and their records.

8. The 341 Meeting continued and, after the Hillers continued to depose the Debtors, concluded on February 16, 2022.

9. On February 22, 2022, the Hillers filed their Motion to Dismiss Chapter 11 Subchapter V Case (Doc. No. 40) ("MTD"). The MTD was Twenty-Eight (28) pages long.

10. On May 26, 2022, the Court entered its Order Converting Case from Chapter 11 to Chapter 7 (Doc. No. 110) ("Conversion Order"). Through the Conversion Order, the Court converted the Case to a Case under Chapter 7 of the Bankruptcy Code and scheduled another 341 Meeting for June 28, 2022.

11. On June 28, 2022, the new 341 Meeting was held and, after the Hillers further deposed the Debtors, concluded.

12. On August 22, 2022, the Hillers filed their Agreed Motion to Extend the Deadline to File a Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523 (Doc. No. 134) ("Motion to Extend"). Through the Motion to Extend, the Hillers requested—and the Debtors agreed not to oppose— entry of an order extending the deadline to file an objection to discharge or complaint to determine the dischargeability of a debt through and including September 28, 2022 (the "Discharge/Dischargeability Deadline").

13. On September 12, 2022, the Hillers filed their Notice of Rule 2004 Examination of Debtor, Joseph Robert Verna (Doc. No. 146) (the "JRV Examination") and Notice of Rule 2004 Examination of Debtor, Karen Elizabeth Verna (Doc. No. 147) (the "KEV Examination"

and, together with the JRV Examination, the "Examinations"), through which the Hillers seek to depose Mr. Verna as to "the acts, conduct, or property or to the liabilities and financial condition of the Debtor's estate, or to the Debtor's right to a discharge." JRV Examination at 1-2, ¶1; KEV at 1-2, ¶1 (same).

## RELIEF REQUESTED

14. The Debtors respectfully request the Court enter an order: (i) granting the Motion; (ii) entering a protective order precluding the Examinations; and (iii) granting the Debtors such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

15. The Court should grant the Motion because the Hillers lack good cause for the Examinations, the benefits of the Examinations are outweighed by the cost and disruption attendant to the Debtors, and the Examinations are being used for improper purposes.

16. The Hillers lack good cause for the Examinations. The Hillers have "the burden of demonstrating good cause for conducting the requested discovery. This burden can be satisfied by demonstrating either that the Rule 2004 discovery is needed to establish a claim, or that the denial of the discovery would cause undue hardship or injustice." *In re Gaime*, 2018 Bankr. LEXIS 4136 at *4 (Bankr. M.D. Fla. 2018) (Colton, J.); *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1994) (same); *see also In re Eagle-Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) ("The one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.").

17. Here, the scope and purpose of the Examinations is a rote recital of Fed. R. Bankr. P. 2004(b)'s absolute limits, without identifying any bases for the examinations sought. *Compare*, e.g., JRV Examination at 1-2, ¶1 (stating the examination "will relate to the acts,

conduct, or property or to the liabilities and financial condition of the Debtor's estate, or to the Debtor's right to a discharge") *with* Fed. R. Bankr. P. 2004(b) (2022) ("The examination . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor . . . or to the debtor's right to a discharge."). The Examinations are not of themselves cause for the Examinations, and there is no good cause for the Examinations.

18. Good cause is also not shown where the parties seeking discovery had "ample opportunity to conduct discovery in the . . . [a]ction" and the parties seeking discovery are not "strangers to th[e] case or the underlying facts." *Gaime*, 2018 Bankr. LEXIS 4136 at *4-*5 (Bankr. M.D. Fla. 2018) (Colton, J.). Here, the Hillers collectively deposed the Debtors for over Ten (10) hours, and already possess or disposed of more than Fifteen Thousand (15,000) documents provided to the Hillers for litigation purposes. Moreover, the Hillers have access to numerous pages of transcripts for the depositions they caused during the Case. The Hillers knew they had all the evidence they could conceivably utilize when they filed the Twenty-Eight (28) page MTD. There is no evidence or reason to believe the Examinations will establish a claim. Similarly, there is no evidence or reason to believe denying the Examinations would cause the Hillers undue hardship or injustice.

19. The Examinations are a concrete example of why the Debtors initiated the Case. The costs and disruption attendant to the Examinations outweigh any value they would provide. "[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *In re Express One Int'l*, 217 B.R. 215 at 217 (Bankr. E.D. Tex. 1998). The first Ten (10) hours of depositions, first Two (2) years of litigation, and first Fifteen Thousand (15,000) documents did not establish a claim by the Hillers against the Debtors. The Hillers do not have an allowable claim against the Debtors; additional

examination will do nothing but increase administrative expenses borne by the Debtors' estate.

20. If the Hillers were able to provide specific bases for the Examination, or a list of specific items or things for inspection and copying, they would have so provided—they did not because they cannot. The stated reasoning behind the Examinations is mere pretext for extending the Discharge/Dischargeability Deadline, and continuing the Hillers' campaign of attrition. The Examinations are designed to abuse and harass the debtors, which constitutes cause to preclude the Examinations. *See, e.g. In re Mittco, Inc.*, 44 B.R. 35 at 36 (Bankr. E.D. Wis. 1984) ("An examination cannot be used for purposes of abuse or harassment.").

21. The Hillers lack good cause for the Examinations, the benefits of the Examinations are outweighed by the cost and disruption attendant to the Debtors, and the Examinations are for dilatory and abusive purposes. The Court should grant the Motion.

WHEREFORE, the Debtors respectfully request the Court enter an order: (i) granting the Motion; (ii) entering a protective order precluding the Examinations; and (iii) granting the Debtors such other and further relief as the Court deems just and proper.

**Dated**: September 27, 2022

Respectfully submitted,

**DAL LAGO LAW**
999 Vanderbilt Beach Road
Suite 200
Naples, FL 34108
Telephone: (239) 571-6877

By: */s/ Christian Garrett Haman*
MICHAEL R. DAL LAGO
Florida Bar No. 102185
Email: mike@dallagolaw.com
CHRISTIAN GARRETT HAMAN
Florida Bar No. 1017079
Email: chaman@dallagolaw.com
JENNIFER MARY DUFFY
Florida Bar No. 1028911
Email: jduffy@dallagolaw.com

*Counsel for Debtors*
*Joseph Robert Verna and*
*Karen Elizabeth Verna*

**CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing was electronically served through the Court's CM/ECF Noticing system upon entry to all parties registered to receive notice including **Michael R. Dal Lago, Esq., Counsel for Debtors**, 999 Vanderbilt Beach Road, Suite 200, Naples, Florida 34108; **Robert E. Tardif, Jr., Counsel for Trustee**, Robert E. Tardif Jr., P.A., P.O. Box 2140, Fort Myers, Florida 33902; and **Jennifer L. Morando, Counsel for Carl Hiller, Susan Hiller, Neuromusculoskeletal Chiropractic and Rehabilitation Associates, PC d/b/a NMS Spine & Joint Institute, Dr. Carl Hiller, derivatively on behalf of Neuromusculoskeletal Chiropractic and Rehabilitation Associates, PC d/b/a NMS Spine & Joint Institute, Chiropractic Medicine Auditing Professionals, LLC, Dr. Carl Hiller, derivatively on behalf of Chiropractic Medicine Auditing Professionals, LLC, 8 Oaklands, LLP, and Dr. Carl Hiller, derivatively on behalf of 8 Oaklands, LLP**, The Heatwole Law Firm, P.A., 1500 E. Robinson Street, Orlando, Florida 32801 this 27th day of September 2022.

By: */s/ Christian Garrett Haman*
CHRISTIAN GARRETT HAMAN
Florida Bar No. 1017079